IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MARCUS TURNER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 122-132 |
| | ) | |
| TYRONE OLIVER, Commissioner, | ) | |
| Georgia Department of Corrections,[1] | ) | |
| | ) | |
| Respondent. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate at Jenkins Correctional Facility in Millen, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.   BACKGROUND

A Richmond County grand jury indicted Petitioner and co-defendant, Montrelle Lorez Teasley, with one count of burglary, two counts of kidnapping, one count of aggravated assault, three counts of possession of a firearm during the commission of a crime, and armed

---

[1]Tyrone Oliver succeeded Timothy Ward as the Commissioner of the Georgia Department of Corrections. Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Tyrone Oliver as the proper Respondent.

robbery, as well as indicted Petitioner individually with one count of possession of a firearm by a convicted felon based on a January 9, 2004 felony conviction for possession of cocaine. (Doc. no. 13-13, pp. 521-25.) After a jury trial in April 2008, Petitioner was convicted of eight of the nine counts with which he had been charged.[2] Turner v. State, 769 S.E.2d 785, 786 (Ga. Ct. App. 2015). The charge of possession of a firearm by a convicted felon was dismissed by an order of *nolle prosequi*. (Doc. no. 13-13, p. 587.) The trial court sentenced Petitioner as a recidivist under O.C.G.A. § 17-10-7(a) to life imprisonment for armed robbery, concurrent twenty-year sentences for burglary, aggravated assault, and two counts of kidnapping, as well as five-year sentences for possession of a firearm during the commission of a crime to run concurrently with each other but consecutive to the life sentence. (Id.; doc. no. 13-14, pp. 434-37.) Appointed attorney Jason Hasty represented Petitioner at trial. (Doc. no. 13-13, pp. 75, 587.)

Appointed attorney Charles A. Jones, Jr., represented Petitioner post-conviction. (Doc. no. 13-14, p. 71.) After a hearing spanning two separate dates on the motion for new trial, (doc. no. 13-13, pp. 33-73), in an order dated August 28, 2012, the trial court denied the motion for new trial in all respects, (doc. no. 13-14, pp. 93-94). Mr. Jones then filed a direct appeal, raising three enumerations of error:

(1)   The trial court erroneously allowed the State to use [Petitioner's] silence against him in violation of Doyle v. Ohio[, 426 U.S. 610 (1976)];

(2)   The trial court violated the continuing witness rule when it allowed witness statements identifying [Petitioner] out of a lineup to go out with the Jury in its deliberation; and

---

[2]Co-Defendant Teasley pleaded guilty prior to a trial. (Doc. no. 1, p. 39; doc. no. 13-13, p. 36.)

2

(3)     The trial court erroneously charged the jury on kidnapping in violation
of <u>Garza v. State</u>[,670 S.E.2d 73 (Ga. 2008)].

(Doc. no. 13-2, p. 4; doc. no. 13-3, pp. 8-18.)  The Georgia Court of Appeals rejected all of

Petitioner's arguments and affirmed the judgment of conviction.  <u>Turner</u>, 769 S.E.2d at 790.

In its opinion, the Georgia Court of Appeals provided the following description of the

evidence at trial:

> . . . [T]he evidence showed that on November 16, 2007, Kendra Andrews was
> in her house with her boyfriend, DeRico Lewis, and their baby.  When Andrews
> heard a knock at the door, she picked up her baby and opened the door slightly
> before two men pushed it in toward her.  As she tried to push back, one man
> pulled out a gun and the other man, whom Andrews identified as Turner,
> grabbed her by the neck.  While maintaining a grip on her neck, Turner pushed
> Andrews, who was still holding her baby, back to the bedroom and onto the bed.
> Turner continued to hold her neck while she was on the bed and held a liquor
> bottle over her and the baby in a threatening manner.  The man with the gun,
> identified as Montrelle Teasley, asked Andrews where the money was, and she
> told him that her purse was on the dresser.  When the men noticed that the
> shower water was running, they asked Andrews who was in there and she replied
> that it was her boyfriend.  Teasley then went into the bathroom.  When Andrews
> asked Turner not to hurt her boyfriend, he responded, "shut up, bitch," and
> punched her in the face.  She them asked him not to hit her baby and he said,
> "fuck that baby."
>
> While Lewis was in the shower, he heard the bathroom door open and pulled
> back the shower curtain to see Teasley pointing a gun at his face.  Teasley asked
> him where the money was, and Lewis told him that it was in his pants on the
> bathroom floor.  After Teasley got the money from Lewis's pants, Lewis
> grabbed the gun.  Teasley turned and fired, hitting Lewis in the forearm.  Lewis
> ultimately gained control of the gun and shot at Teasley and Turner, who still
> had Andrews and the baby pinned down on the bed.  Lewis eventually got both
> men out of the house, and Andrews contacted the police.

<u>Id.</u> at 787.

Petitioner next filed a *pro se* state habeas corpus petition on March 10, 2016, in Dodge

County, and amended his petition five times.  (Doc. nos. 13-4, 13-5, 13-6, 13-7, 13-8, 13-9.)

Although Petitioner raised multiple claims in his state habeas proceedings, relevant to the

3

current federal proceedings, Petitioner raised the following claims:

(1)    Trial counsel provided ineffective assistance by failing to object to the State's late notice of intent to seek recidivist punishment under O.C.G.A. § 17-10-7(a) and not objecting to the state using his prior conviction for possession of cocaine to enhance the sentence;

(2)    Appellate counsel provided ineffective assistance by failing to raise on appeal the errors of trial counsel regarding the late notice of intent to seek recidivist punishment and use of the prior conviction for possession of cocaine to enhance the sentence; and

(3)    Petitioner's rights were not protected by the trial court in light of the prosecutorial misconduct of failing to timely provide notice of the intent to seek recidivist punishment, which resulted in the trial court imposing a void life sentence for which it had no jurisdiction and violating Petitioner's Eighth and Fourteenth Amendment rights.

(Doc. no. 13-10, pp. 1-69.)  The state habeas court conducted evidentiary hearings on June 28 and July 19, 2017, (doc. no. 13-12, p. 1; doc. no. 13-13, p. 1), and denied relief in a Final Order filed on September 17, 2019, (doc. no. 13-11).  The Georgia Supreme Court denied a certificate of probable cause to appeal ("CPC") without comment.  (Doc. no. 13-16, <u>Turner v. Tatum</u>, No. S20H0300 (Ga. Aug. 23, 2022).)

Petitioner then timely filed the above-captioned § 2254 *pro se* petition with supporting brief, and a second brief in support, as well as an additional amendment, raising the following claims for relief:

(1)    Trial counsel provided ineffective assistance by:

    a.   failing to object to an untimely notice of intent to seek recidivist punishment; [3]

---

[3]Petitioner repeats this ineffective assistance of trial counsel claim under the Ground Three claims regarding alleged error by the trial court in failing to protect Petitioner's rights.  (Doc. no. 5, pp. 16-18.)

        b.  failing to call Petitioner's co-defendant Montrelle Teasley as a witness at trial; and

        c.  filing a Speedy Trial demand.

(2)    Appellate counsel provided ineffective assistance by not raising an ineffective assistance of trial counsel claim based on the failure to object to the untimely notice of intent to seek recidivist punishment.[4]

(3)    The trial court erred "in not protecting Petitioner's US Constitutional Rights [4th, 5th, 6th, 8th, 9th and 14th]" by:

        a.  refusing to grant the request to withdraw the demand for a speedy trial;

        b.  imposing a recidivist sentence when it had no jurisdiction to do so;

        c.  not recognizing and prohibiting the prosecutorial misconduct of filing an untimely notice of intent to seek recidivist punishment; and

        d.  violating the continuing witness rule by allowing written statements identifying Petitioner from a line up to go out with the jury during deliberations.

(4)    The State engaged in prosecutorial misconduct by providing untimely notice of intent to seek recidivist punishment and late disclosure of the evidence it intended to use to support the request for such punishment.

(See doc. nos. 1, 5, 15.)

Respondent argues federal relief should be denied on all claims because the state court decisions deserve deference, the federal claims are procedurally defaulted, or because federal relief is not available for alleged violations of state law.  (See doc. nos. 11, 11-1, 17, 18.)

---

[4]Petitioner repeats this ineffective assistance of appellate counsel claim under the Ground Three claims regarding alleged error by the trial court in failing to protect Petitioner's rights.  (Doc. no. 5, pp. 16, 18-19.)

## II.	STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
>
> (1)	resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)	resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure

of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for

asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86,

103 (2011).  Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard

for evaluating state-court rulings, which demands that state-court decisions be given the benefit

of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the

difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1)

as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

6

Id. (internal citations omitted).  Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice."  White v. Woodall, 572 U.S. 415, 419 (2014).  Rather, the habeas petition must show the state court decision was "objectively unreasonable."  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").  A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013).  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence."  Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of

review.").  "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III.   DISCUSSION

### A.   Petitioner's Procedural Default

#### 1.   A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims the petitioner did not raise in state court, but could have raised by any available procedure.  28 U.S.C. § 2254(b)(1)(A) & (c).  A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims.  Castille v. Peoples, 489 U.S. 346, 351 (1989).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

Moreover, giving the state courts an opportunity to act on a petitioner's claims includes allowing the state courts to complete the appellate review process.  As the Supreme Court explained:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

Id. at 845.  This "one full opportunity" includes pursuing discretionary review with the highest available appellate court where the highest court of the state has not opted out of this requirement.  Id.  "Georgia's appeal process requires that a petitioner seek a certificate of probable cause to appeal to the Georgia Supreme Court; claims not raised in an application for a certificate of probable cause are considered unexhausted on subsequent federal habeas review.  Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1364 (11th Cir. 2020) (citations omitted); see also Pope v. Rich, 358 F.3d 852, 853 (11th Cir. 2004) (per curiam) (ruling a petitioner's "failure to apply for a certificate of probable cause to appeal the denial of his state habeas petition to the Georgia Supreme Court means that [the petitioner] has failed to exhaust all of his available state remedies.").

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."  Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)).  The exhaustion requirement applies with equal force to all constitutional claims.  See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-54 (11th Cir. 2012); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992).  "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'"  Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (citation omitted).  Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available.  McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005).

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court. First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds.  "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment." Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim.  Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law.  Finally, the state procedural rule must be adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion.  The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine.  In other words, a state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed."

Id. at 1336 (internal quotations and citations omitted).  Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default."  Walker v. Martin, 562 U.S. 307, 311 (2011).

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he

attempted to raise it in state court.  In such instances, unless the petitioner either establishes the cause and prejudice or the fundamental miscarriage of justice exception, the failure to bring the claim properly in state court has "matured into a procedural default."  Smith v. Jones, 256 F.3d 1135, 1138-39 (11th Cir. 2001).  Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."  Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1342 (11th Cir. 2009) (citing Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998)); Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999).  To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile."  See Bailey, 172 F.3d at 1305.

Simply put, if a claim has not been "fairly presented to the state courts, it is procedurally defaulted."  Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006).  To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal.  See Devier v. Zant, 3 F.3d 1445, 1454-55 (11th Cir. 1993) (citing O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); see also Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default, and in order to surmount the bar to a defaulted claim, one must meet the 'cause and prejudice' test."); Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows:  a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus.").  In addition, Georgia law

prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition.  O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

### 2.   Petitioner's Claims in Ground One Are Procedurally Defaulted

In Ground One, Petitioner argues trial counsel provided ineffective assistance in three ways:  (a) failing to object to an untimely notice of intent to seek recidivist punishment, (b) failing to call co-defendant Montrelle Teasley as a witness, and (c) filing a Speedy Trial demand.  Respondent argues these three claims are defaulted.

### a.   Consideration of Ground One (a) Is Barred Because the State Court Finding the Claim Was Not Properly Preserved Is an Independent and Adequate State Ground for Denying Relief

"[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); see also Wilson v. Sellers, 584 U.S.-, 138 S. Ct. 1188, 1193-94 (2018) (applying Ylst "look through" presumption when relevant state court decision on the merits does not come accompanied with statement of reasons).  Thus, because the state supreme court decision on the CPC application was not accompanied by reasons for affirming the denial of state habeas relief, (doc. no. 13-16, p. 1), this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale."  Wilson, 138 S. Ct. at 1192.

The state habeas court ruled the ineffective assistance of trial counsel claim regarding the failure to object to an untimely notice of intent to seek recidivist punishment was procedurally barred because it was not raised on direct appeal, and under Georgia law, that failure – absent a showing of cause and actual prejudice – bars consideration of the issue in habeas corpus.  (Doc. no. 13-11, pp. 5-6 (citing Black v. Hardin, 255 Ga. 239 [336 S.E.2d 754] (1985).)  In Black, the Georgia Supreme Court ruled that failing to timely object "to *any* alleged error or deficiency or to pursue the same on appeal" usually precludes review in state habeas proceeding unless there is a "showing of adequate cause for failure to object or to pursue on appeal *and* a showing of actual prejudice."  336 S.E.2d at 755.  The court went on to reverse the grant of habeas corpus relief because the petitioner had not shown cause and prejudice for failing to raise the constitutional claims on appeal, and there had been no miscarriage of justice. Id.

Here, the state habeas court applied Black, and determined Petitioner had not established cause and actual prejudice for failing to raise his issue in Ground One (a) on direct appeal.  (Doc. no. 13-11, p. 6.)  Because Ground One (a) was not timely raised in the underlying state court proceedings and was denied by the state court under state procedural default rules "firmly established and regularly followed," it is procedurally defaulted in these proceedings and provides no basis for federal habeas relief.  See Boyd, 697 F.3d at 1336; McNair, 416 F.3d at 1305; Smith, 256 F.3d at 1139.

**b.    Consideration of Subparts (b) & (c) of Ground One Is Barred Because They Are New Claims that Were Not Raised in State Court**

Respondent argues the ineffective assistance of trial counsel claims regarding the failure to call co-defendant Montrelle Teasley as a witness and improperly filing a Speedy Trial demand are new claims which were not raised in the state courts, and the claims are therefore procedurally defaulted because they would be deemed successive if raised on a second state collateral attack.  (Doc. no. 11-1, pp. 14-17.)

Although Petitioner raised multiple ineffective assistance of trial counsel claims in his state habeas petition, neither of these two issues were included.   (See doc. no. 13-10.) "[H]abeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petition that were not first presented to the state courts."   Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004) (citing Footman, 978 F.2d at 1211).  Accordingly, Petitioner's Ground One, subparts (b) and (c), are new, could have been presented in the state courts, and therefore are now procedurally defaulted.  See O.C.G.A. § 9-14-51; Chambers, 150 F.3d at 1327.

**3.    Petitioner Cannot Satisfy the Cause and Prejudice Standard to Justify Federal Review of Any of His Defaulted Claims in Ground One, and the Miscarriage of Justice Exception Does Not Apply**

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default."  Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)).  "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule."

14

Maples v. Thomas, 565 U.S. 266, 280 (2012) (internal quotation marks omitted). "Once cause is proved, a petitioner also must prove prejudice. He must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). For example, procedural default does not preclude federal habeas review when

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 569 U.S. 413, 423 (2013); Martinez v. Ryan, 566 U.S. 1, 13-14, 16-17 (2012).

Petitioner has presented no valid justification for failing to raise his defaulted claims at the proper time in his state proceedings, let alone something external to him that cannot be fairly attributed to him. Although ineffective assistance of counsel may demonstrate cause, see United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000), as discussed in Part III(B) below, Petitioner has no valid ineffective assistance of appellate counsel claim, and he does not show any of his defaulted claims against Mr. Hasty are substantial.

As to the claim in Ground One (a) regarding Mr. Hasty failing to object to an untimely notice of intent to seek recidivist punishment, the state habeas court reviewed Georgia law on providing notice of intent to seek recidivist punishment and concluded Petitioner had received the timely notice required under Georgia statutes such that he had been given advance warning

15

that his prior conviction would be used against him at sentencing.[5]  (Id. at 6-7 (citing Barstad v. State, 764 S.E.2d 453 (Ga. Ct. App. 2014) and Nation v. State, 556 S.E.2d 196 (Ga. Ct. App. 2001)).)

In accepting the state court's construction of Georgia law regarding the timing of the recidivist notice to determine Petitioner has no substantial claim, the Court is mindful that "although the issue of ineffective assistance – even when based on the failure of counsel to raise a state law claim – is one of constitutional dimension, we must defer to the state construction of its own law when the validity of" the claim upon which ineffective assistance is based turns on state law."  Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1295 (11th Cir. 2017). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 n.9 (11th Cir. 2020) (collecting cases for proposition federal habeas relief not available based on state's interpretation of its own laws or rules); Green v. Georgia, 882 F.3d 978, 988 (11th Cir. 2018) ("On habeas review, federal courts may not second guess state courts on questions of state law.").  Thus, accepting the state court's interpretation of the applicable Georgia statute, because satisfactory notice was provided, Mr. Hasty could not have been ineffective in failing to make a meritless objection.  See Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015) (explaining failure to raise non-meritorious objection not deficient performance).

---

[5]The Court also notes that while the trial was held from April 16 to April 18, 2008, the sentencing did not occur until May 15, 2008, (doc. no. 13-14, p. 430), giving Petitioner additional time from the official filing in open court of the recidivist notice to review and raise any issues with the prior conviction before sentencing.

16

In any event, Petitioner presents nothing in these federal proceedings that undermines the state court's interpretation of the notice requirements regarding recidivist sentencing. O.C.G.A. § 17-10-7(a) provides that the maximum sentence must be imposed upon a defendant previously convicted of a felony who is then found guilty of a subsequent felony.  The notice of intent to pursue this type of recidivist sentencing must be noticed by the prosecutor "no later than ten days prior to trial, or at such time as the court orders but in no event later than the beginning of the trial, provide the defendant with notice of any evidence in aggravation of punishment that the state intends to introduce at sentencing."  O.C.G.A. § 17-16-4(5).

Petitioner strenuously argues that because the prosecutor did not file the Notice of State's Intent to Seek Recidivist Punishment Under O.C.G.A. § 17-10-7(a), (doc. no. 13-13, p. 576), until April 18, 2008, after the jury had been sworn and the trial had commenced, his recidivist sentence resulting in life imprisonment on the armed robbery charge is not proper. Georgia courts have repeatedly ruled, however, that the statute requires only "clear notice," not written notice.  West v. Waters, 533 S.E.2d 88, 90 (Ga. 2000); Mullinax v. State, 530 S.E.2d 255, 257 (Ga. Ct. App. 2000); Moss v. State, 425 S.E.2d 386, 389 (Ga. Ct. App. 1992); Graham v. State, 319 S.E.2d 484, 497 (Ga. Ct. App. 1984).  The point of the clear notice is to allow a defendant the chance to review the record and determine if the convictions to be used are his and if there is any defect which would render the documents inadmissible.  Moss, 425 S.E.2d at 389; see also Roberts v. State, 314 S.E.2d 83, 95–96 (Ga. 1984) (recognizing purpose of notice requirement to allow examination of record prior to sentencing).

Moreover, Georgia courts have ruled that the notice requirement may be satisfied by a charge appearing in the indictment of being a felon in possession of a firearm, as well as

17

information provided in discovery of prior convictions as listed on a Georgia Crime Information Center (GCIC) report.  Ross v. State, 722 S.E.2d 411, 415 (Ga. Ct. App. 2012); Parks v. State, 669 S.E.2d 684, 689 (Ga. Ct. App. 2008); Nation v. State, 556 S.E.2d 196, 201 (Ga. Ct. App. 2001).[6]  Indeed, the purpose of the notice requirement is to provide sufficient time prior to sentencing to rebut or explain prior convictions, and even if an objection is made, the trial court has the option of granting a postponement of sentencing to facilitate the purpose of the notice.  Soler v. State, 840 S.E.2d 169, 172-73 (Ga. Ct. App. 2020).  Only upon a showing of prejudice and bad faith would the trial court be allowed to prevent the introduction of a prior conviction.  Id.

Here, although Petitioner now contends his prior conviction was obtained by an uncounseled, and thus, unconstitutional guilty plea, he provides no evidence in support of that claim, and there is no evidence of bad faith by the prosecutor.  Moreover, the record contains a copy of paperwork from his 2004 change of plea in the case for possession of cocaine - as listed in the indictment for the 2008 case at issue in these proceedings – which shows he had an attorney, acknowledged and waived his rights, and pleaded guilty to the felony of possession of cocaine.  (Doc. no. 13-13, pp. 599-603.)  As Petitioner has not demonstrated there was any basis upon which an objection would have barred the use of his prior conviction

_____

[6]As noted *supra*, the state habeas court relied on both Nation v. State and Barstad v. State, 764 S.E.2d 453, 457-58 (Ga. Ct. App. 2014), for the proposition that the important requirement of the statute requiring notice of intent to seek recidivist punishment is that the defendant have advance warning of the prior convictions, which could be provided in discovery, and that an indictment charging a separate count with a crime based on a prior conviction – here, a felon in possession count charged in count 9 – is sufficient notice.  (Doc. no. 13-11, pp. 7-9.)

to enhance his sentence, he fails to demonstrate prejudice, a fatal blow to any potential ineffective assistance claim based on the alleged timing error.  See Soler, 840 S.E.2d at 173.

Similarly, as to the claims in Ground One subparts (b) & (c), which Petitioner failed to raise in his state habeas petition, Petitioner has not shown something external to him impeded his efforts to comply with the statutory requirements of O.C.G.A. § 9-14-52(b), let alone that these are substantial claims.  As to Ground One (b), Mr. Hasty testified at the state habeas hearing that co-defendant Teasley's information would not have helped the defense, and he posed a credibility problem that could have actually harmed Petitioner's case.  (Doc. no. 13-13, pp. 48-49.)  Petitioner's one paragraph statement from Mr. Teasley, who accepted a plea deal, claiming responsibility for all criminal acts for which Petitioner was convicted, (doc. no. 1, p. 46), even when coupled with Mr. Teasley's testimony at the state habeas hearing that he would have testified on Petitioner's behalf, (doc. no. 13-13, pp. 63-65), does not overcome the strong deference owed to strategic decisions about which witnesses to call, see Strickland v. Washington, 466 U.S. 668, 690 (1984).[7]  This is especially true here, in light of the trial testimony from both victims identifying Petitioner as one of the armed robbers, (doc. no. 13-13, pp. 94, 100, 121, 127, 132, 134, 138, 148), and Mr. Teasley's implausible and completely exculpatory testimony that he simply "met up" with Petitioner around the victims' home right after the robbery occurred, (doc. no. 13-13, p. 64).[8]

---

[7]The two-part test for ineffective assistance claims set forth in Strickland is discussed in detail in Part III(B)(1).

[8]As Petitioner himself testified at trial that he met Mr. Teasley at his grandmother's house and they were walking to the store together prior to the armed robbery, (doc. no. 13-13, pp. 411-13, 416-17), Mr. Hasty's credibility concerns were apparently well founded.

Similarly, other than the conclusory statement that Mr. Hasty filed the demand for a speedy trial without first consulting him, (doc. no. 1, p. 20), Petitioner offers nothing to suggest, let alone establish, that asking for a speedy trial was an objectively unreasonable trial tactic.  Indeed, Petitioner states he asked for a trial, and he does not identify anything about the speedy trial demand that caused him prejudice.[9] (Id.)  Nothing suggests a substantial claim exists or there would have been any basis for an ineffective assistance claim based on Mr. Hasty's request.[10]

Accordingly, Petitioner has failed to demonstrate the necessary cause and prejudice necessary to overcome his procedural default of all claims raised in Ground One.

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice." Jones, 436 F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime.  Murray, 477 U.S. at 496; see also Johnson, 256 F.3d at 1171 ("This exception is exceedingly narrow in scope, as it concerns a petition's 'actual' innocence rather than his 'legal' innocence.").  In McQuiggin v. Perkins, the Supreme Court held that this exception survived AEDPA's passage but "applies to a severely confined category:  cases in which new

___

[9]Petitioner's argument on this point is confusing at best, as he claims counsel made him plead guilty to all charges to force him to trial.  (Doc. no. 1, p. 20.)

[10]At Petitioner's request, Mr. Hasty filed a motion to withdraw the speedy trial request, (doc. no. 13-13, p. 539 ), but the trial court denied the request.

20

evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  569 U.S. 383, 395 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Petitioner offers no new evidence to suggest, let alone plausibly establish, he is factually innocent of the crimes of which he was convicted.  Even if he had offered any new evidence, as discussed in detail herein, the bulk of Petitioner's arguments are based on legal theories of alleged error.  Accordingly, all claims in Ground One have been defaulted and provide no basis for federal habeas relief.

**B.    Applying AEDPA Deference to the Ineffective Assistance of Appellate Counsel Claim Rejected by the State Courts, Federal Habeas Relief Is Not Warranted**

**1.    Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best criminal defense attorneys would not defend a particular client the same way." Philmore v McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691. "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." <u>Devier v. Zant</u>, 3 F.3d 1445, 1450 (11th Cir. 1993). "Which witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [the Court] will seldom, if ever, second guess." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (<em>en banc</em>). Indeed, "strategic choices are 'virtually unchallengeable.'" <u>Provenzano v. Singletary</u>, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing <u>Strickland</u>, 466 U.S. at 690 and <u>Waters</u>, 46 F.3d at 1522). "[C]ounsel will not be deemed unconstitutionally deficient because of tactical decisions . . . , and [t]he presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (internal citations omitted).

To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. <u>Strickland</u>, 466 U.S. at 690; <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983) (<em>per curiam</em>) ("Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." (citations omitted)). The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (<em>en banc</em>). <u>Strickland</u> requires application of a totality-of-the-circumstances standard because "[n]o particular set of detailed rules for

counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Khan v. United States, 928 F.3d 1264, 1273 (11th Cir. 2019) (citation omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512). "The reasonableness of counsel's performance is evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances . . . ." Michael, 430 F.3d at 1319 (citations omitted)

> As emphasized by the Eleventh Circuit:
>
> [D]eferential review under Strickland does not ask whether counsel could possibly or ideally have been more effective. "The test for ineffectiveness is not whether counsel could have done more." We do not ask whether an attorney's representation "deviated from best practices or common custom," and we should resist the temptation to second-guess an attorney with the benefit of our hindsight. Rather, Strickland asks only "whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." . . . We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances.

Jenkins v. Comm'r, Ala. Dep't of Corr., 963 F.3d 1248, 1269-70 (11th Cir. 2020) (internal citations omitted), cert. denied, Jenkins v. Dunn, 141 S. Ct. 2635 (U.S. 2021).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Dell v. United States, 710 F.3d 1267, 1273 (11th Cir. 2013), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore, 575 F.3d at 1264 (explaining appellate counsel not required to raise every non-frivolous issue).  Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'"  Nyhuis, 211 F.3d at 1344 (citation omitted). Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review.  Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264.  Prejudice turns on whether "the neglected claim would have a reasonable probability of success on appeal."  Philmore, 575 F.3d at 1265 (citation omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner."  Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable").  "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."  Bell, 535 U.S. at 699.  "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

"Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the

question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard." <u>Richter</u>, 562 U.S. at 105.  Stated otherwise, federal habeas corpus relief is available on a <u>Strickland</u> claim "only if the state habeas court *unreasonably* determined that trial counsel performed reasonably - *i.e.*, where there is no possibility fairminded jurists could disagree that defense counsel acted outside the range of professionally competent assistance. . . ."  <u>Ledford v. Warden, Ga. Diagnostic Prison</u>, 975 F.3d 1145, 1158 (11th Cir. 2020) (internal quotation marks and citations omitted), *cert. denied*, 141 S. Ct. 2832 (U.S. 2021).  For Petitioner "to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." <u>Raheem v. GDCP Warden</u>, 995 F.3d 895, 909 (11th Cir. 2021).

"Surmounting <u>Strickland's</u> high bar is never an easy task."  <u>Richter</u>, 562 U.S. at 105 (citing <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010)).  Moreover, because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so."  <u>Richter</u>, 562 U.S. at 105 (quotation marks and citations omitted); <u>see also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . .  [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 578 U.S. 113, 117 (2016) (*per curiam*) (internal quotations and citations omitted).

26

To summarize, for Petitioner to obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." Id. That is, if fairminded jurists could reach differing conclusions, this Court owes deference to the state court decision, and federal relief is not available. Shinn v. Kayer, 592 U.S.-, 141 S. Ct. 517, 525 (2020) (per curiam). "Or, in more concrete terms, a federal court may grant relief only if every 'fairminded juris[t]' would agree that every reasonable lawyer would have made a different decision." Dunn v. Reeves, 594 U.S. -, 141 S. Ct. 2405, 2411 (2021) (per curiam) (emphasis in original) (citation omitted). "The Strickland standard is a general one, so the range of reasonable applications is substantial." Richter, 562 U.S. at 105; see also Sexton v. Beaudreaux, 584 U.S.-, 138 S. Ct. 2555, 2560 (2018) ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); Woods, 575 U.S. at 316 ("AEDPA's standard is intentionally difficult to meet.").

### 2. The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground Two Was Not Objectively Unreasonable

In Ground Two, Petitioner argues he received ineffective assistance from appellate counsel, Mr. Jones, because he did not raise an ineffective assistance of trial counsel claim against Mr. Hasty based on the failure to object to the untimely notice of intent to seek recidivist punishment. In applying Strickland, the state habeas court found no merit to the underlying claim and concluded Mr. Jones did not provide ineffective assistance on this point. (Doc. no. 13-11, pp. 5-9.)

27

### a.    Background

Mr. Jones was appointed by the Georgia Public Defender's Standards Council to represent Petitioner after trial concluded and the motion for new trial had been filed because Petitioner wanted to raise an ineffective assistance claim against Mr. Hasty.  (Doc. no. 13-13, pp. 17-18.)  Mr. Jones testified that in preparing for the appeal, he would have obtained the trial transcript, reviewed overruled and sustained objections for potential error, met with trial counsel to discuss any potential appeal issues, and reviewed correspondence from Petitioner regarding issues he wanted to raise.  (Id. at 18.)  Mr. Jones testified he had sufficient time to prepare for the motion for new trial and appeal, and he would have raised any ineffective assistance of trial counsel claims he discovered.  (Id. at 4.)  Although Mr. Jones did not check on the constitutionality of Petitioner's 2004 guilty plea that was used to impose a recidivist sentence, he discussed the matter with Mr. Hasty and did not see any reason to believe there was a problem with the guilty plea.  (Id. at 10.)

Mr. Jones raised all issues he thought had merit and were most likely to lead to reversal of Petitioner's convictions.  (Id. at 19.)  Mr. Jones acknowledged he did not check on the timing of the notice of intent to seek recidivist sentencing, and that the notice was filed on April 18, 2008, after commencement of trial on April 16, 2008.  (Id. at 13.)  Mr. Jones testified that in hindsight, he "probably" would have raised the timing of the notice, but it has been his experience that any type of notice given is acceptable to the trial court.  (Id. at 15.)

### b.    Analysis

Petitioner argues Mr. Jones provided ineffective assistance on appeal by not alleging ineffective assistance against Mr. Hasty based on the failure to object at trial to an untimely

notice of intent to seek recidivist punishment.   The state habeas court specifically noted Petitioner had not alleged Mr. Jones was ineffective for failing to raise a standalone claim regarding the timing of the recidivist notice.   Rather, Petitioner argued Mr. Hasty was ineffective on this point, as alleged in the federal petition. (Doc. no. 13-11, p. 6.)  In concluding there was no ineffective assistance by Mr. Jones for not raising ineffective assistance by Mr. Hasty, the state court determined there was no merit to the underlying notice claim based on the felon in possession count of the indictment and the trial court's colloquy with Mr. Hasty regarding Petitioner's awareness of the potential to be sentenced as a recidivist.  (Id. at 7-9.) Petitioner fails to show error in the state habeas decision that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Woods, 575 U.S. at 316.

Because Petitioner raises his challenge as an ineffective assistance of appellate counsel claim, there must be a showing of merit to an underlying ineffective assistance of trial counsel claim for not objecting to the timing of the recidivist notice.  See Payne v. Allen, 539 F.3d 1297, 1314-15 (11th Cir. 2008).  At the state habeas hearing, Mr. Hasty testified the local practice at the time was to provide the recidivist information, in the discovery package, often as an unfiled copy of the recidivist notice, and, so long as the notice was actually filed prior to sentencing, the trial court would allow it.  (Doc. no. 13-12, pp. 18-19.)  Mr. Hasty also testified he had reviewed Petitioner's criminal history prior to trial.  (Id. at 16.)

Moreover, as the state habeas court pointed out, and the trial transcript confirms, when the recidivist notice was filed in open court, the trial court specifically asked if Petitioner was aware of the recidivist position and paused the proceedings to allow Mr. Hasty to confer and

29

confirm with Petitioner.  (Doc. no. 13-13, pp. 399-400.)  Although Petitioner now argues he never affirmatively agreed on the record that he was aware of the possibility of recidivist punishment, (doc. no. 5, p. 17), he also never denied he was aware of his prior conviction.  (Id. at 400.)  In any event, at the time the State filed it recidivist notice, the prosecutor also announced that conviction on the armed robbery charge itself carried the potential for a sentence of life in prison.  (Id. at 399); see also O.C.G.A. § 16-8-41(b) ("A person convicted of the offense of armed robbery shall be punished by death or imprisonment for life or by imprisonment for not less than ten nor more than 20 years.").

Although Mr. Jones testified that, in hindsight, he "probably" would have raised a claim regarding the timing of recidivist notice, he also acknowledged any type of notice given is acceptable to the trial court.  (Doc. no. 13-13, p. 15.).  Moreover, as discussed in detail in Part III(A)(3) above, Georgia case law supports the experience of both Mr. Hasty and Mr. Jones that strict adherence to the requirement for written notice ten days prior to trial is not required so long as notice is provided prior to sentencing such that a prior conviction can be challenged. See, e.g., Soler, 840 S.E.2d at 172-73 ; Moss, 425 S.E.2d at 389.  Thus, Petitioner's federal claim against Mr. Jones fails because there is no reasonable probability that the failure to raise an ineffective assistance claim against Mr. Hasty would have changed the outcome of the appeal because the underlying claim about the timing of the recidivist notice has no merit.  See Hawes v. Perry, 633 F. App'x 720, 725 (11th Cir. 2015) (per curiam) (citing Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990) for proposition that "ineffective-assistance-of-appellate-counsel claim that challenges the failure to bring a claim can be successful only if there is a reasonable probability that the omitted issue would have affected the outcome").

30

Petitioner cites Eagle v. Linahan, 279 F.3d 926 (11th Cir. 2001), to support his ineffective assistance of appellate counsel claim based on Mr. Jones's acknowledgment that looking back, he "probably" would have raised an ineffective assistance claim based on the timing of the recidivist notice, (doc. no. 5, p. 13), but this decision is inapposite.  According to Petitioner, the mere fact that counsel did not recognize the potential error regarding the recidivist notice, not whether the challenge would have been successful, entitles him to federal habeas relief.  (Id. at 13-14.)  In other words, alleged ignorance of a potential argument on the timing of the notice amounts to ineffective assistance, and Petitioner need not show there was a valid challenge to be made.  (Id.)  The Court disagrees.

First, Eagle is quickly distinguished from the instant case because the record contained a statement by the trial judge regarding jury selection that counsel for both sides "were doing what you could to get the different races off" (the jury) and had misapplied the law.  279 F.3d at 931, 942.  There is nothing in this record suggesting the trial court conveyed there was a problem with the timing of the recidivist notice or that either counsel had misapplied the law.  To the contrary, the trial court confirmed with the defense it was aware of the possibility of recidivist sentencing.  (Doc. no. 13-13, pp. 399-400.)

Second, the Eagle court granted relief on the claim appellate counsel was ineffective for failing to raise a *standalone* Batson claim.  Id. at 943.  Petitioner here raised his ineffective appellate assistance claim based on failing to raise an ineffective assistance of trial counsel claim regarding the failure to object to the timing of the recidivist notice.  Petitioner must show a valid claim satisfying the two-prong Strickland test, a showing Petitioner did not make.  Indeed, the state habeas court made the distinction that Petitioner had couched his claim on the

31

recidivist notice not as a standalone claim, but under the rubric of ineffective assistance. (Doc. no. 13-11, p. 6.)  Finally, post-Eagle, rather than merely allowing the identification of an unrecognized potential error, the Eleventh Circuit has continued to follow the Strickland requirement for showing a "reasonable probability of a different result sufficient to undermine our confidence in the outcome" of the case. Price v. Sec'y, Dep't of Corr., 548 F. App'x 573, 576 (11th Cir. 2013).  As discussed in detail above, there is nothing presented here to suggest the result of any proceedings would have been different if the ineffective assistance claim had been raised because of the lack of merit to the underlying claim.

In sum, the state court's decision to reject the ineffective assistance of appellate counsel claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  This claim provides no basis for federal habeas corpus relief.

Finally, for the sake of completeness, the Court notes Petitioner filed two motions to amend his petition, (doc. nos. 14, 15), the second of which bears a notation that suggests the first motion to amend was mistakenly filed, (doc. no. 15, p. 9).  In these motions, Petitioner again challenges his recidivist sentence based on the timing of the notice and the validity of the guilty plea for the conviction upon which his recidivist sentence is based.  In response to the motions, Respondent took the position neither motion substantively amended the original petition, but instead provided "additional factual detail and argument" to the claims in Grounds One and Two of the original petition regarding the timeliness of the recidivist notice.  (Doc. no. 17.)

To the extent this "additional factual detail" could be read to argue not only that Petitioner was improperly sentenced as a recidivist because of an untimely notice, but also because the conviction for possession of cocaine used as the basis for the recidivist sentence was obtained by virtue of an unconstitutional guilty plea, the conclusory argument forms no basis for relief.  First, the Rules Governing § 2254 Cases require "fact pleading" as opposed to "notice pleading" as is required under Fed. R. Civ. P. 8(a).  Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011).  A conclusory assertion of an unconstitutionally obtained guilty plea will not suffice.  Petitioner provides no evidence in support of any argument that his guilty plea was obtained in violation of Boykin v. Alabama, 395 U.S. 238, 242-43 (1969), regarding entry of a knowing and voluntary guilty plea.

Second, as discussed in Part III(A)(3), *supra*, the record contains paperwork from his 2004 change of plea to cocaine possession, as listed in the indictment for the 2008 case, which shows he had an attorney, acknowledged and waived his rights, and pleaded guilty to the felony of possession of cocaine.  (Doc. no. 13-13, pp. 599-603.)  Thus, whether considered as providing "additional factual detail" about the claims regarding the timing of the recidivist notice, or attempting to bootstrap a new claim that was first not properly raised in state court and is therefore barred in these federal proceedings and/or otherwise without merit, the argument Petitioner raises regarding unidentified problems with the guilty plea used for the recidivist sentence forms no basis for federal habeas relief.

### C.     Petitioner Is Not Entitled to Relief on His Remaining Claims

Between his original federal petition and brief in support, (doc. no. 1), supplemental brief in support, (doc. no. 5), and amendment to the original petition, (doc. nos. 14, 15),

33

Petitioner raised the four claims and subparts set forth in Part I, *supra*, but he often repeats the ineffective assistance claims regarding the recidivist notice under multiple headings. The Court has addressed all of the ineffective assistance claims above, and the remaining claims concern alleged error by the trial court and the prosecutor. As explained below, these claims form no basis for federal habeas relief.

### 1. Conclusory Claims Unsupported by Specific Factual Detail Form No Basis for Relief

In Ground Three, Petitioner argues several grounds of trial court error, including a sweeping statement his "4th, 5th, 6th, 8th, 9th and 14th" rights under the United States Constitution were not protected. As noted *supra*, the Rules Governing § 2254 Cases require "fact pleading" as opposed to "notice pleading" as is required under Fed. R. Civ. P. 8(a). Borden, 646 F.3d at 810; see also Frazier v. Bouchard, 661 F.3d 519, 527 (11th Cir. 2011) (recognizing federal habeas petitioners must fact plead their claims to satisfy heightened pleading requirements.)

> To properly fact plead, a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.

Arrington v. Warden, GDCP, No. CV 117-022, 2017 WL 4079405, at *2 (S.D. Ga. Sept. 14, 2017) (internal quotation marks and citations omitted) (Hall, C.J.).

To the extent Petitioner follows his general statement with fact-specific alleged errors by the trial court, those claims will be specifically addressed. However, a sweeping and conclusory statement and string cite of constitutional amendments will not suffice. Moreover,

Respondent points out certain of Petitioner's laundry list of claims are barred by <u>Teague v. Lane</u>, 489 U.S. 288 (1989).  (Doc. no. 11-1, p. 18.)  Petitioner has not argued, and the Court is not aware of, any legal precedent that non-specific Fourth, Fifth, Sixth, and Ninth Amendment protections have been extended to state court recidivist sentencing proceedings.[11]   To the contrary, the United States Supreme Court long ago ruled state recidivist statutes and procedures designed to implement their underlying policies have been sustained "against contentions that they violate constitutional strictures dealing with double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities." <u>Spencer v. State of Tex.</u>, 385, U.S. 554, 559-60 (1962); <u>Parke v. Raley</u>, 506 U.S. 20, 27-28 (1992) (same); <u>see also</u> <u>Oyler v. Boles</u>, 368 U.S. 448, 452-53 (1962) (recognizing "due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding").

---

[11]"Federal habeas corpus review 'serves to ensure that state convictions comport with federal law that was established at the time petitioner's conviction became final.'"  <u>Tharpe v. Warden</u>, 898 F.3d 1342, 1344 (11th Cir. 2018) (<i>per curiam</i>) (citations omitted).  Under the <u>Teague</u> doctrine, the Court may not retroactively apply "in a [collateral] proceeding. . . any new constitutional rule of criminal procedure which had not been announced at the time the movant's conviction became final, with two narrow exceptions." <u>McCoy v. United States</u>, 266 F.3d 1245, 1255 (11th Cir. 2001).  The two exceptions are (1) new substantive rules that place conduct beyond the reach of criminal law or remove a class of defendants from a certain type of punishment; and (2) watershed procedural rules implicating the fundamental fairness and accuracy of the proceeding such as the holding in <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963), that a defendant charged with a serious offense is entitled to legal representation.  <u>See</u> <u>Knight v. Fla. Dep't of Corr.</u>, 936 F.3d 1322, 1331 (11th Cir. 2019).  As neither side provides any particularized, substantive analysis regarding Georgia's application of its own notice requirements to recidivist sentencing, the Court declines to hypothesize arguments for either side and need not conduct a threshold <u>Teague</u> analysis that has not been "properly raised." <u>Id.</u> (citation omitted).

Similarly, in one line in the form federal petition, Petitioner alleges in Ground Three (a) that the trial court erred in refusing to grant Mr. Hasty's motion to withdraw a Speedy Trial demand made pursuant to O.C.G.A. § 17-7-170.  (Doc. no. 1, p. 8; see also id. at 36.)  Petitioner provides no additional information and does not mention it at all in his second brief in support of his petition.  (See doc. no. 5.)  This conclusory claim, unsupported by specific facts, does not form the basis for federal habeas corpus relief.[12]

First, Petitioner does not explain how or why he was not ready for trial as scheduled, let alone what would have changed about the presentation of his case had his motion to withdraw the Speedy Trial demand been granted.  Second, Petitioner provides no details of the circumstances of the motion to withdraw the Speedy Trial demand other than to say he directed Mr. Hasty to file it a mere two days before trial, and the motion itself provides no details.  (See doc. no. 1, pp. 33-34, 36.)  Nor does Petitioner provide any details supporting an argument that the trial court abused its discretion in denying the request.  In any event, Georgia's speedy trial statute does not provide a substantive right but instead establishes a procedure for asserting a defendant's right to a speedy trial.  See Cross v. State, 528 S.E.2d 241, 242 (Ga. 2000).  "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." McCullough v. Singletary, 967 F.2d

---

[12]Even if Petitioner had explained the basis for his claim with sufficient detail, it appears such a claim would likely be procedurally defaulted because Petitioner did not raise any speedy trial claims on direct appeal or in the state habeas petition.  Practically speaking, this appears to be an attempt to bootstrap a speedy trial claim under a general statement of trial court error because, as explained in Part III(A)(2)(b) & (3) above, Petitioner procedurally defaulted his ineffective assistance claim against Mr. Hasty for *filing* a Speedy Trial demand. He cannot avoid that default by flipping the claim against the trial court for *denying* the request to withdraw the demand under the general rubric of constitutional error.

530, 535 (11th Cir. 1992); see also Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688

(11th Cir. 2005) ("Federal habeas relief is unavailable 'for errors of state law.' " (citation

omitted)).  Thus, even if Petitioner had alleged error with specific detail to support his claim –

which he has not – federal habeas relief is not available for this claim regarding how the trial

court chose to address a motion to withdraw a request made pursuant to a state procedural rule.

> **2.    Claims Raised but Not Addressed in State Habeas Proceedings Form No Basis for Federal Habeas Relief**
>
> > **a.    Application of Georgia Recidivist Statute to Petitioner Does Not Amount to Cruel and Unusual Punishment or a Violation of Due Process**

In his state habeas proceedings, Petitioner argued allowing the State to file its notice of

intent to seek recidivist punishment, which resulted in the imposition of a life sentence, was

cruel and unusual punishment and violated due process notice requirements, (doc. no. 13-10,

pp. 61-63), but the state habeas court did not address the claim, (doc. no. 13-11).  Nevertheless,

the claim has likely been considered on the merits because Petitioner appears to have asserted

the issue in his application for a CPC, (doc. no. 11-13, pp. 5, 17), and the CPC application was

summarily denied, (doc. no. 13-16).  See Hittson v. GDCP Warden, 759 F.3d 1210, 1231-32

(11th Cir. 2014) (explaining summary denial of CPC application in Georgia constitutes

decision on the merits of any argument raised in application).

In any event, the Court need not make a final determination on whether this claim was

"inadvertently overlooked in state court," which would rebut the presumption that this federal

claim was decided on the merits.  Bester v. Warden, 836 F.3d 1331, 1336 (11th Cir. 2016)

(citation omitted).  This is so because, as discussed below, Petitioner is not entitled to relief,

even under *de novo* review.  Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review."); see also Williams v. Alabama, 791 F.3d 1267, 1273 (11th Cir. 2015) ("[R]esting between AEDPA deference and procedural default is a third path.  If the state court did not reach the merits of a petitioner's claim based on some ground that is not adequate to bar federal review, we must review the claim *de novo*." (citation omitted)).

Petitioner argues in the opening of Ground Three that the trial court imposed a "cruel and unusual" sentence after allowing the prosecutor to file a notice to seek recidivist punishment after the trial commenced.  (Doc. no. 5, p. 18.)  He does not argue that the recidivist sentencing statute itself is cruel and unusual or violates due process.  Rather, he argues imposition on him of a recidivist sentence violates the Eighth and Fourteenth Amendments because the State did not provide timely notice of its intent to do so.  As discussed extensively above, the notice provided by the State in the indictment, the discovery package, and announcement in open court weeks prior to sentencing, adequately satisfied the notice requirements and afforded him an opportunity to be heard had he chosen to do so.

Additionally, although the Eighth Amendment prohibits cruel and unusual punishment, the United States Supreme Court has long recognized recidivism as a legitimate basis for increased sentencing.  See Parke, 506 U.S. at 27.  Moreover, the narrow proportionality principle of the Eighth Amendment that applies to noncapital sentences allows for few successful challenges to sentence proportionality outside the context of capital punishment.

38

United States v. Johnson, 451 F.3d 1239, 1242 (11th Cir. 2006) (*per curiam*); see also United States v. Moriarty, 429 F.3d 1012, 1024 (11th Cir. 2005) (explaining "*successful* challenges to the proportionality of sentences [are] exceedingly rare" (citation omitted)).  Petitioner has the burden to show his sentence is "grossly disproportionate" to his offense, and generally, a sentence within statutory limits "is neither excessive nor cruel and unusual under the Eighth Amendment."  Johnson, 451 F.3d at 1243 (citation omitted).

Petitioner has neither shown nor established his sentence was grossly disproportionate. Instead, he argues that filing the recidivist notice after the trial commenced is sufficient to find his life sentence unconstitutional.  Moreover, even if he had not been sentenced as a recidivist, Georgia law allows for a sentence of up to life in prison for his conviction on the armed robbery charge.  O.C.G.A. § 16-8-41(b) ("A person convicted of the offense of armed robbery shall be punished by death or imprisonment for life or by imprisonment for not less than ten nor more than 20 years.").

In sum, "[s]electing the sentencing rationales is generally a policy choice to be made by state legislatures, not federal courts."  Ewing v. California, 538 U.S. 11, 25 (2003). Petitioner has not shown his recidivist life sentence for armed robbery is grossly disproportionate or was imposed without sufficient notice, let alone that the trial court erred in imposing the sentence.  This claim provides no basis for federal habeas relief.

> **b.     Trial Court Failure to Recognize and Prohibit Prosecutorial Misconduct Regarding Untimely Recidivist Notice**

Petitioner argued in his state habeas proceedings, as he does in Grounds Three (c)  and Four of his federal petition, the State engaged in prosecutorial misconduct that the trial court

failed to recognize and prohibit when the prosecutor filed an untimely notice of intent to seek recidivist punishment, (doc. no. 13-10, pp. 61-62, 64), but the state habeas court did not address the claims, (doc. no. 13-11).  However, as with the claim in Part III(C)(2)(a), the Court need not make a definitive determination whether the claims were inadvertently overlooked in state court because Petitioner is not entitled to relief, even under *de novo* review.  Berghuis, 560 U.S. at 390.

First, as discussed in detail above, these claims are based on the faulty premise that the notice provided regarding recidivist sentencing was improper.  As notice was sufficient under the statute, there was nothing for the trial court to "recognize and prohibit."  Second, "the bar for granting habeas based on prosecutorial misconduct is a high one" which requires a finding the challenged conduct "rendered the trial 'fundamentally unfair.' "  Land v. Allen, 573 F.3d 1211, 1220 (11th Cir. 2009) (*per curiam*) (citation omitted).  As the Supreme Court has explained, "[P]rosecutorial misconduct may 'so infect the trial with unfairness as to make the resulting conviction a denial of due process,' " but the misconduct must be " 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' "  Greer v. Miller, 483 U.S. 756, 765 (1987).

Here, when the State filed its notice to seek recidivist punishment, Mr. Hasty stated to the trial court he was aware of the prior conviction and discussed it with Petitioner.  (Doc. no. 13-13, p. 399.)  Moreover, the sentencing did not occur until May 15, 2008, (doc. no. 13-14, p. 430), weeks after the official filing in open court such that Petitioner had sufficient time to investigate and challenge, if necessary, the prior conviction – which, of course, is the purpose of the notice requirement.  See Hightower v. State, 436 S.E.2d 31, 32 (Ga. Ct. App. 1993);

40

<u>Moss</u>, 425 S.E.2d at 389; <u>Roberts</u>, 314 S.E.2d at 95–96.  Thus, nothing about the prosecutor's

conduct regarding the timing of filing the notice to seek recidivist punishment approaches the

high bar required to show Petitioner was denied a fair trial.

Thus, Grounds Three (c) and Four form no basis for federal habeas relief.

### 3.    Challenges to Trial Court Jurisdiction and Evidentiary Ruling Form No Basis for Federal Relief

Petitioner argued in his state habeas proceedings, as he does in Ground Three (b) of

his federal petition, the trial court did not have jurisdiction to impose a recidivist sentence of

life in prison, (doc. no. 13-10, p. 63), but the state habeas court did not address the claim, (doc.

no. 13-11).    However, as explained previously, the Court need not make a definitive

determination whether the claim was inadvertently overlooked in state court because Petitioner

is not entitled to relief, even under *de novo* review.  <u>Berghuis</u>, 560 U.S. at 390.

The notice statute regarding recidivist sentencing is a rule of criminal procedure, not

subject matter jurisdiction.  <u>See</u> <u>Ward v. State</u>, 682 S.E.2d 128, 130 (Ga. Ct. App. 2009)

("[T]he motion below contended only that the State failed to give proper notice under former

O.C.G.A. § 17-10-2(a)(1999) that it intended to use certain prior convictions of [the defendant]

to seek recidivist punishment.  Such notice requirements are procedural and not substantive in

nature. . . . .  [T]he lack of such notice cannot void the sentence."); <u>Powell v. State</u>, 494 S.E.2d

200, 201 (Ga. Ct. App. 1997) ("The [requirements of O.C.G.A. § 17-10-2(a)] do not affect the

jurisdiction of the court. . . .  [T]he protection afforded by O.C.G.A. 17-10-2(a) is statutory in

origin, [and] does not affect the court's jurisdiction. . . .").  The Georgia Supreme Court has

further explained, "[A] sentence is void if the court imposes punishment that the law does not

allow," but because the notice requirements for recidivist sentencing can be waived, claims of error regarding such notice "do not amount to claims that the sentence imposed was void. . . ." von Thomas v. State, 748 S.E.2d 446, 449-50 (Ga. 2013). Stated otherwise, Georgia law allows recidivist sentencing upon notice of the requisite predicate felony conviction. Therefore, allegations of error under the statute do not impact the sentencing court's jurisdiction or make the sentence void, but instead raise state procedural issues.

Likewise, in Ground Three (d), Petitioner raises another claim based on a state rule, this time a state rule of evidence. As he did on direct appeal, Petitioner argues the trial court erred when it allowed photographic lineup identification forms signed by the victims of the armed robbery to go out with the jury in violation of the continuing witness rule. As the Georgia Court of Appeals explained in rejecting the claim on direct appeal:

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. The types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations.

Turner, 769 S.E. 2d at 789 (citation omitted). The Court of Appeals ruled that because the lineup identification forms are documents supporting a photographic lineup and not equivalent to testimony, allowing the forms to go out with the jury was not a violation of the continuing witness rule. Id. (citing Kenney v. State, 397 S.E.2d 131 (Ga. Ct. App. 1990)).

A state court criminal judgment may be collaterally attacked in the federal courts only if it violated federal law. Wilson v. Corcoran, 562 U.S. 1, 3 (2010); Estelle v. McGuire, 502

U.S. 62, 68 (1991).  Indeed, "federal habeas corpus relief does not lie for errors of state law." Estelle, 502 U.S. at 67 (citations omitted); see also Tuomi, 980 F.3d at 796 n.9 (same, collecting cases).  "State courts are the ultimate expositors of their own state laws, McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992), and the federal habeas court does not sit as a "'super' state supreme court."  Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (per curiam) (citations omitted).  As Georgia's recidivist statute is a rule of criminal procedure, not subject matter jurisdiction, and the continuing witness rule is a state rule of evidence, the claims do not allege violations of federal constitutional rights.  Therefore, Grounds Three (b) and (d) form no basis for federal habeas relief.

IV.   **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 2nd day of June, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA